## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**ALI PARTOVI,**                          )
                                          )
            **Plaintiff,**                )
                                          )
        **v.**                            )   **Civil Action No. 08-1445 (ESH)**
                                          )
**JAMES MATUSZEWSKI,** *et al.,*          )
                                          )
            **Defendants.**               )
_____)

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on defendants' motion to dismiss.  The motion will be

granted, and this action will be dismissed with prejudice.

### BACKGROUND

Plaintiff finds himself in the custody of the U.S. Immigration and Customs Enforcement

("ICE"), a component of the United States Department of Homeland Security, as a result of these

events:

> On October 22, 2001, Petitioner Ali Partovi, who claims to have been born
> in Iran, arrived in the United States from Japan and applied for admission as a
> visitor under the Visa Waiver Program using a fraudulent Italian passport bearing
> the name Michelle Franchini.  Partovi was accompanied by Farzon Hatami
> Aghdam. The United States Immigration and Naturalization Service ("INS")
> detained both Partovi and Aghdam and determined that they were using false
> passports.  Upon being interviewed, both claimed to be refugees from Tehran,
> Iran.  Partovi stated he was Armenian Catholic and, due to his religious beliefs,
> could not return to Iran.

> As a result to his use of a false passport, Partovi was paroled into the
> United States for prosecution, and due to his claims of fear of returning to Iran,
> Partovi was placed into removal proceedings to adjudicate his application for
> asylum, withholding and protection under the Convention Against Torture.

On January 7, 2002, Partovi submitted to the INS an Application for Asylum and for Withholding of Removal.  In the Application, Partovi identified his present nationality as Iranian and identified his religion as Roman Catholic. He sought asylum or withholding of removal based on his religion and the Convention Against Torture.

On April 17, 2002, Partovi pleaded guilty to one count of False Use of a Passport under 18 U.S.C. § 1543.

On May 3, 2002, the Immigration Court held a hearing on Partovi's application for asylum, withholding of removal and protection under the Convention Against Torture.  At the conclusion of the hearing, Immigration Judge Dayna Dias denied Partovi's request for asylum, noting that the "application is frivolous."  The judge also denied Partovi's request for withholding of removal and found him ineligible for deferral of removal under the Convention Against Torture.  Partovi reserved appeal and the Order indicates that the appeal was due by June 3, 2002.  Partovi did not appeal the Order.

*Partovi v. Ashcroft*, No. 03-CV-1098, 2005 U.S. Dist. LEXIS 32520, at *3 (D. Ariz. Oct. 18, 2005) (Magistrate Judge Report and Recommendation) (internal citations omitted), *adopted*, 2005 U.S. Dist. LEXIS 32510, at *2 (D. Ariz. Dec. 8, 2005).  Plaintiff filed a petition for a writ of habeas corpus in the United States District Court for the District of Arizona.  *See id.*  That court denied the habeas petition in part and transferred to the United States Court of Appeals for the Ninth Circuit the portion of the petition deemed to be a challenge to the Immigration Judge's decision.  *See id.*  The Ninth Circuit concluded that it lacked jurisdiction over plaintiff's claim due to his "failure to seek review from the [Bureau of Immigration Appeals] the [Immigration Judge's] denial of his asylum application [which] constitutes a failure to exhaust administrative remedies . . . ."  *Partovi v. Gonzales*, 239 F. App'x 397, 398 (9th Cir. 2007).

Plaintiff brought this action against two Immigration Officers who allegedly "use[d] deception in an attempt to get [plaintiff's] signature on a deportation and removal document." (Compl. at 4.)  According to plaintiff, Officers Matuzewski and Drinkwater informed him that he would be released from custody if he could identify a person to provide him with a residence and

employment.  *Id.*  Plaintiff supplied this information, at which point he "was ask[ed] to sign

paper work that would finalize [his] release[.]" *Id.*  When he "discovered that the paperwork had

nothing whatsoever to do with realing [sic] [him]," plaintiff refused to sign the papers.  *Id.*

While plaintiff merely "refused to become a victim of deception," he has been "accused of

refusing to cooperate with deportation travel documents and electronic monitoring device

program . . . ."  *Id.*  He has demanded unspecified "injunctive relief, as deemed necessary and

just by the Court, as well as compensatory damages in the amount of $5,000,000.00[] for the

suffer[ing] that was cause[d] by defendants, in violation of plaintiff['s] constitutional rights."  *Id.*

at 5.

## DISCUSSION

Plaintiff brings this civil rights action against Matuszewski and Drinkwater in both their

official and individual capacities under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named*

*Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  (Compl. at 1-2.)  Defendants have

moved to dismiss the complaint on the grounds that: (1) the court lacks subject matter

jurisdiction, (2) the court lacks personal jurisdiction, (3) venue is improper, (4) service of process

is insufficient, and (5) failure to state a claim upon which relief can be granted.  (*See generally*

Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ["Defs.'

Mot."].)  For purposes of this Memorandum Opinion, the Court presumes without deciding that

it has personal jurisdiction, that venue is proper, and that service of process is sufficient.

**A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims**
**Against Matuszewski and Drinkwater in their Official Capacities.**

Defendants argue that the doctrine of sovereign immunity deprives the Court of subject

matter jurisdiction over plaintiff's claims against Matuszewski and Drinkwater in their official

capacities.  (*See* Defs.' Mot. at 4-5.)

A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted).  As Immigration Officers, Matuszewski and Drinkwater are ICE employees.  Insofar as plaintiff sues Matuszewski and Drinkwater in their official capacities, the Court proceeds as if these claims were brought against the United States itself.  *See, e.g.*, *Eastridge v. United States*, No. 06-CV-448, 2007 WL 495797, at *10 (D.D.C. Feb. 12, 2007) (construing claim against former Assistant United States Attorneys for the District of Columbia in their official capacities as one brought directly against the United States).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Such consent may not be implied, but must be "unequivocally expressed."  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992).  The United States has not waived its sovereign immunity for constitutional tort claims, *see Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477 (1994) (stating that sovereign immunity precludes damage claims against the United States government for constitutional violations brought under the Federal Tort Claims Act), and sovereign immunity extends to governmental agencies and to their employees where such employees are sued in their official capacities.  *See id.* at 483-86.  Thus, absent a waiver of sovereign immunity, the plaintiff cannot prevail in his claims for damages against any federal government official sued in his official capacity.  *Fed. Deposit Ins. Corp. v. Meyer*; 510 U.S. at

475; *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Clark v. Library of Congress*, 750 F.2d 89, 101-02 (D.C. Cir. 1984); *Meyer v. Reno*, 911 F. Supp. 11, 18 (D.D.C. 1996).

Nothing in plaintiff's complaint suggests that the United States has waived sovereign immunity rendering itself amenable to suit under the circumstances in this case. Accordingly, the Court will grant defendants' motion to dismiss the complaint as against them in their official capacities under the doctrine of sovereign immunity. *See, e.g.*, *Ranger v. Tenet*, 274 F. Supp. 2d 1, 6 (D.D.C. 2003) (concluding that sovereign immunity bars § 1983 claims for monetary damages against the Central Intelligence Agency and its Director in his official capacity).

**B.     The Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

**1.     Standard for dismissal under Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must first assume the veracity of all "well-pleaded factual allegations" contained in the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009); *cf. Iqbal*, 129 S. Ct. at 1949-50

(clarifying when courts are not required to assume truth of allegations).  Although "detailed

factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer

"more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief."  *Twombly*,

550 U.S. at 555.  Courts need not accept as true "'naked assertion[s]' devoid of 'further factual

enhancement,'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557), or "legal

conclusions cast in the form of factual allegations."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).

Next, courts must determine whether the well-pleaded allegations "plausibly give rise to

an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face," in that "the court [can] draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1950.  A complaint

alleging facts which are "'merely consistent with' a defendant's liability, . . . 'stops short of the

line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly* 550

U.S. at 557) (brackets omitted).

## 2.      The complaint fails to state a claim under 42 U.S.C. § 1983.

Section 1983 provides, in pertinent part, that:

> [e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (2006) (emphasis added).  In order to state a claim under § 1983 for a violation

of a constitutional right, a complaint must allege facts sufficient to support a reasonable

inference that (1) a person (2) acting under color of state, territorial, or District of Columbia law

6

(3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right

secured by the Constitution or laws of the United States.  *See, e.g.*, *City of Oklahoma City v.*

*Tuttle*, 471 U.S. 808, 829 (1985).

It is settled that a plaintiff cannot maintain a § 1983 action against the United States or its

officers because the provision "does not apply to federal officials acting under color of federal

law."  *Settles v. United States Parole Comm'n*, 429 F.3d at 1104.  It follows, then, that the

complaint fails to state a § 1983 claim against Matuszewski and Drinkwater in their official

capacities, or against the United States itself, upon which relief can be granted.  *See Williams v.*

*United States*, 396 F.3d 412, 414-15 (D.C. Cir. 2005) (affirming grant of summary judgment in

favor of special policeman employed by Government Printing Office, a federal agency with

headquarters in Washington, D.C., because policeman did not act under color of D.C. law for

purposes of § 1983 when he arrested plaintiff); *Ranger v. Tenet*, 274 F. Supp. 2d 1, 6 (D.D.C.

2003) (concluding that, even if § 1983 authorized a lawsuit against the CIA, "the CIA, as an

agency of the federal government, was presumably acting under color of federal statutes and

agency procedures when it allegedly violated [plaintiff's] Fifth and Fourteenth Amendment

rights"); *Richardson v. United States  Dep't of Interior*, 740 F. Supp. 15, 20 (D.D.C.1990)

(dismissing § 1983 claim against U.S. Park Police officer under Rule 12(b)(6) because the officer

was not acting under color of D.C. law when he arrested the plaintiff).

### 3.     The complaint fails to state a *Bivens* claim.

A *Bivens* suit "is the federal analog to suits brought against state officials under . . . 42

U.S.C. § 1983."  *Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007)

(citing *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)).  Defendants

argue that plaintiff's *Bivens* claim is subject to dismissal because they are protected by qualified immunity.  (*See* Defs.' Mot. at 11-13.)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability," *id*. at 806, and is designed to dispose of "insubstantial lawsuits" on a motion to dismiss, before the point at which the defendant is required to engage in substantial litigation.  *Id.* at 808.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and . . . is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

By definition, qualified immunity is not absolute.  However, "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984).  The Court considers, "then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the [Defendant's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. at 201.  If the facts alleged do not show a constitutional violation, the inquiry

ends.  *Id*. at 207.

### a)      Fifth Amendment

It appears that plaintiff intends to invoke a right to due process under the Fifth

Amendment to the United States Constitution.  (*See* Compl. at 4; Plaintiff['s] Response to

Defendants['] Motion to Dismiss ("Pl.'s Opp'n") at 4-5.)  "[T]he Due Process Clause applies to

all 'persons' within the United States, including aliens, whether their presence here is lawful,

unlawful, temporary or permanent."  *Zadvydas v.Davis*, 533 U.S. 678, 693 (2001) (citing *Plyer v.*

*Doe*, 457 U.S. 202, 210 (1982)).  Plaintiff argues that defendants "placed his life in grave

Jeopardy by deceiving him into signing the travel documents," notwithstanding the Immigration

Judge's decision to defer his removal under the Convention Against Torture.  (Pl.'s Opp'n at 4;

*see id.*, Ex. 3 (May 3, 2002 Order of the Immigration Judge, Case No. A76-282-295).)  Plaintiff

neglects to mention that the Immigration Judge ultimately "denied Partovi's request for

withholding of removal and found him ineligible for deferral of removal under the Convention

Against Torture."  *Partovi*, 2005 U.S. Dist. LEXIS 32520, at *3.  Plaintiff has no constitutional

right to remain in the United States now that his removal order became final.  *Cf. Harisiades v.*

*Shaughnessy*, 342 U.S. 580, 586-87 (1952).  Moreover, plaintiff's continued detention is due to

his refusal to cooperate with immigration officials in securing travel documents.  He "cannot

legitimately object to his continued detention when that very detention is caused by his own

conduct."  *Pelich v. Immigration and Naturalization Serv.*, 329 F. 3d 1057, 1060 (9th Cir. 2003);

*see* 8 U.S.C. § 1231(a)(1)(C) (authorizing extension of removal period and continued detention

of an alien who "fails or refuses to make timely application in good faith for travel or other

documents necessary to the alien's departure or conspires or acts to prevent the alien's removal

subject to an order of removal").  It follows, then, that defendants' attempt to secure travel

documents for plaintiff's removal does not violate the United States Constitution.

<strong>b)      Eighth Amendment</strong>

Plaintiff's complaint articulates no Eighth Amendment claim (*see generally* Compl.), and

his opposition to defendants' motion to dismiss merely asserts, with no explanation, that "[t]he

Government's action violated his rights under the United States Convention Against Torture and

other cruel, Inhuman or Degrading Teratment [sic] or Punishment."  (Pl.'s Opp'n at 6.)  The

allegation is therefore a "'naked assertion[]' devoid of 'further factual enhancement'" and cannot

be presumed true.  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  This pleading

defect is fatal because the complaint does not contain "sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

Accordingly, the Court concludes that the facts alleged in the complaint, which are

accepted as true, fail to show that defendants' conduct violated a constitutional.  The Court will

grant defendants' motion to dismiss on the ground that, in their individual capacities, they are

protected by qualified immunity.[1]

<strong>CONCLUSION</strong>

The Court will grant defendants' motion to dismiss because it lacks subject matter

jurisdiction over plaintiff's claims against Matuszewski and Drinkwater in their official

capacities, and because the complaint fails to state claims against Matuszewski and Drinkwater

---

[1] In the alternative, the Court concludes that the complaint fails to state a claim upon
which relief can be granted because there is no causative link between the alleged actions of
defendants and his continued detention.  Defendants are accused of trying to trick plaintiff into
signing deportation and removal papers without which, it appears, he cannot be released from
detention; it is his alleged refusal to sign those papers, and not the actions of defendants in
allegedly trying to obtain his signature, that have contributed to his continued detention.

10

in their individual capacities.

An Order consistent with this Memorandum Opinion is issued separately on this same date.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:    August 21, 2009